No. 60.—WILLIAM DOUGHTERTY and others, plaintiffs in error, *vs.* SEABORN JONES and others, defendants in error.

[1.] The manner of examining parties before a Master in this State, is by written interrogatories, settled by the Master.

In Equity, in Muscogee Superior Court. Decision by Judge IVERSON, at Chambers, April, 1852.

The question in this case arose upon an investigation before Judge *Iverson*, sitting as a Master in Chancery. In response to an order of the Court, Seaborn Jones and other parties defendants filed a written answer to the matters contained in the order served upon them. Their answers not being satisfactory to the complainants, counsel moved that the defendants be placed upon the stand, and be examined orally before the Master, which motion was refused, on the ground that by the usage of Chancery Courts, all such examinations must be in writing.

This decision is assigned as error.

WILLIAM DOUGHERTY, for plaintiff in error.

BENNING, for defendant in error.

*By the Court.*—NISBET, J. delivering the opinion.

[1.] This question, as to the manner of examining a party before the Master, is new in our Courts. In this case, the Judge of the Superior Court, who is the Chancellor, seems to have acted as a Master. Our Chancery organization, except in particular localities by special Act, recognizes no such distinctive officer as the Master. The Chancellor himself, as in this case, may assume the functions of the Master, for the purpose of interlocutory orders. When so acting, in the absence of any legislation to direct the mode of procedure, he will be governed, so far as our peculiar Chancery organization will permit, by the rules and usages of the English Courts. As to the manner of examining a party or a witness in the Master's office, our legislation is silent.

The provisions of our laws, as to the taking of testimony, relate to *trials* at Law and in Equity. This being the state of the case, the only thing to be settled here is, the manner of examination. In the Master's office in England, prior to the time when we adopted the British Common Law, that was in writing, upon interrogatories duly settled by the Master, *toties quoties*. *Daniel's Ch. Pr.* 1366. 2 *Johns. Ch. R.* 499. 11 *N. H. R.*

501. *Dickens*, 548. 6 *Vesey*, 459. 17 *Ibid*, 434. 1 *Turner's Pr.* 103, 5, 10.

This was the mode of examining parties and witnesses. In the case of a party, the interrogatories were *settled* by the Master; in the case of a witness, they were settled by the counsel, unless in the order of reference, the Master was directed to settle them himself. By an order or rule, promulgated in 1828, the Master was at liberty to examine any creditor or other person, coming in to claim before him, either in writing or *viva voce*, or in both modes, as the nature of the case might seem to him to require ; the evidence being taken down at the time, by the Master or the Master's clerk, in his presence, and preserved, in order that the same might be used if necessary. *Daniel's Ch. Pr.* 1379. In case of a mere witness, this is a safe and convenient practice. We think when parties are examined before the Master, the original rule, which is in fact obligatory upon this Court, is safest, and ought to be adhered to.

Let the judgment be affirmed.